WELLS, Judge.
 

 Linda Klein appeals from a final judgment quieting title in Melania Flores Meza to a condominium unit previously owned by Klein’s mother, Isobel Isserlis. Because there is no evidence to support a judgment in Meza’s favor, we reverse.
 

 This action commenced in January 2000 when the Kendall Acres Condominium Association brought suit to collect approximately $3,400 allegedly due in connection with condominium unit G-5. Meza, the occupant of the unit, and Isserlis, its title holder, were joined in the suit.
 

 Meza, who years earlier had entered into a contract for deed
 
 [1]
 
 with Isser-lis, claimed that she had paid the charges at issue and that the association had made a bookkeeping error. Klein, claiming to be Isserlis’ only child and heir, was substituted for Isserlis who died before the action was commenced and counterclaimed
 
 pro se,
 
 on her own behalf and, astoundingly as a non-Bar member, on Meza’s behalf, asserting the association’s malicious prosecution, slander of title, and abuse of process.
 

 Within weeks after this suit commenced, the almost $45,000 balloon payment that Meza was required to make to Isserlis (or to her estate, beneficiaries or heirs) under the terms of the contract for deed for unit G-5 came due.
 
 [2]
 
 Meza did not, however, make this payment to acquire title as required. Rather, according to Meza, she trusted Klein to secure the financing necessary for her to comply with the contract for deed. No financing was secured by either Klein or Meza, and Meza never
 
 *53
 
 made the balloon payment necessary to acquire title. Meza did, however, continue to occupy unit G-5 and to pay the same amount monthly to Klein that she had been paying under the contract for deed.
 

 In August 2004, over four years after this action commenced (and after Meza failed to make the balloon payment), the court below began to question whether Klein was the owner of the unit and a proper party to the association’s suit. To address this concern, Klein took Meza to a lawyer who had Meza execute a quitclaim deed conveying unit G-5 to Klein. According to Meza, it was only at this juncture that she “finally realized that neither Klein nor the lawyers [Klein] retained could fairly represent [Meza’s] interests,” and she hired her own lawyers. Meza then brought a cross claim against Klein, claiming (i) that Meza had become the owner of the unit by adverse possession; (ii) that Klein had illegally terminated the contract for deed; and (iii) that the 2004 quitclaim deed from Meza to Klien was invalid.
 

 In response to Meza’s claim regarding the validity of the 2004 deed from herself to Klein, Klein asserted ownership under another deed, one dated 1997, purportedly executed by Klein’s mother, conveying unit G-5 to Klein. Although Klein claimed that this earlier deed had been witnessed and notarized at the time it was signed (in 1997), later testimony confirmed this to be a lie.
 

 Based on (1) Meza’s claim that she, Klein’s former housekeeper with little knowledge of English, had relied on Klein, a sophisticated real estate investor and broker in the underlying contract for deed, in not making the balloon payment due under the contract for deed and in executing the 2004 quitclaim deed, and (2) Klein’s purported attempt to perpetrate a fraud on the court with regard to the 1997 deed, the court below struck all of Klein’s pleadings and entered a default against Klein. The court then entered final judgment invalidating both the 1997 and 2004 deeds and quieting title in Meza against both Klein and Isserlis’ estate on Meza’s section 95.18 adverse possession claim.
 
 See
 
 § 95.18, Fla. Stat. (2000).
 

 We reverse this judgment in its entirety because, as a matter of law, the facts alleged, even if admitted, do not support quieting title in Meza on her section 95.18 adverse possession claim. At the outset, we note that the trial court’s rulings regarding the validity of the 1997 and 2004 deeds have no bearing on the ultimate outcome of this case. Even if the 1997 deed from Isserlis to Klein is invalid, the fact remains that either Isserlis’ estate, her heirs, or her beneficiaries have at all times material held title to unit G-5 and are entitled to enforce the contract for deed executed by Meza, unless Meza is legally excused from performing under that contract. Likewise, even if the 2004 deed from Meza to Klein is invalid, the fact remains that Meza never made the balloon payment required by the contract for deed and thus never became the owner of unit G-5 with anything to convey.
 

 Reduced to its essence, Meza’s claim is that her failure to comply with the contract for deed should be forgiven because she relied on representations made by Klein and thus she should be allowed to complete the sale. Alternatively, Meza claims that by virtue of the adverse possession statutes, sections 95.16 and 95.18 of the Florida Statutes, she is entitled to ownership outright without paying the remainder of the contract price. The trial court decided that Meza is entitled to title outright under section 95.18, the adverse possession without color of title provision. We disagree.
 

 Section 95.18(1) of the Florida Statutes provides that where no written instrument exists, continued occupancy for seven
 
 *54
 
 years under a claim of exclusive title constitutes adverse possession if the person in possession has made a return of the property by proper legal description to the property appraiser within a year of taking possession and has made payment of all taxes and matured installments of special improvement liens levied by governmental entities:
 

 Real property actions; adverse possession without color of title
 

 (1) When the occupant or those under whom the occupant claims have been in actual continued occupation of real property for 7 years under a claim of title exclusive of any other right, but not founded on a written instrument, judgment, or decree, the property actually occupied shall be held adversely if the person claiming adverse possession made a return of the property by proper legal description to the property appraiser of the county where it is located within 1 year after entering into possession and has subsequently paid all taxes and matured installments of special improvement liens levied against the property by the state, county, and municipality.
 

 § 95.18(1), Fla. Stat. (2008).
 

 The complaint in this case alleges facts that establish that Meza enjoyed possession of unit G-5 from January 1991 through February 2000 pursuant to a written contract for deed. As both section 95.18 and the Florida Supreme Court make clear, “possession under an executo-ry contract is not adverse as to the vendor and his privies.”
 
 Wright Estates v. Germain,
 
 152 Fla. 612, 12 So.2d 451, 452 (1943) (citations omitted). Adverse possession during this period of time could not, therefore, exist.
 

 Meza’s continued occupancy following her conceded failure in February 2000 to make the balloon payment called for in the contract for deed also does not constitute adverse possession under section 95.18. As her cross claim against Klein confirms, after defaulting under the terms of the contract for deed (thereby failing to acquire title as agreed), Meza reverted to her status as a tenant making monthly payments to Klein, which Klein accepted. Although Meza alleges that she has paid the property taxes on the unit and has been designated by the tax collector as the owner of the unit, this neither forgives her obligation to pay the remainder of the purchase price to acquire title as agreed under the contract for deed, nor makes her the owner of this property by operation of law:
 

 The law is that a tenant may become an adverse holder against his landlord without surrendering his possession yet in such case it is incumbent on the claimant to show his disavowal of the landlord’s title by clear, positive and unequivocal evidence. It is not enough for him to simply remain in possession and exercise all the rights of an apparent owner, for the law presumes that once a man goes into possession as a tenant the relationship continues until the contrary is made to appear.
 

 Little v. Kendrick,
 
 152 Fla. 720, 12 So.2d 899, 900 (1943).
 

 Meza has, therefore, neither alleged nor proved facts that would entitle her to fee simple ownership of unit G-5 without payment of the balance of the agreed to purchase price. This does not mean that Meza is without remedy. Count II of Meza’s complaint expressly seeks enforcement of the contract for deed, including a declaration of any amount due, and alleges that:
 

 21. Ms. Meza is ready, willing; and able to perform under the Agreement and to pay the balance due under the Agreement when Ms. Klein or the Court confirms title, provides a deed, cooperates with other condominium and closing
 
 *55
 
 requirements, and complies with her obligation to account to Ms. Meza for the funds paid over to Ms. Klein and/or Ms. Isserlis.
 

 22. To the extent that Ms. Klein disputes the amount due as a result of the payments and occupancy after the closing date specified in the Agreement or as a result of the dispute with the Association, Ms. Meza seeks this Court’s determination of the rights of the parties under the Agreement.
 

 Thus, while we reverse the judgment entered in Meza’s favor relieving her of any further obligation to comply with the contract for deed and declaring her the fee simple owner of unit G-5, we remand for the court below to determine whether any basis exists for forgiving Meza’s failure to comply with the contract for deed in February 2000 and, if so, what reasonable period of time is sufficient for her to secure financing to make the balloon payment (approximately $44,800) mandated by that agreement. This will also provide the court below with the opportunity to determine what, if any, sanction should be imposed on Klein as a consequence of her behavior regarding the 1997 deed.
 

 We also order the court below on remand to determine to whom this sum should properly be paid. It goes virtually without saying that due process demands that a party against whom judgment is entered must be put on notice of the claim against it and accorded a meaningful opportunity to defend.
 
 See Hinton v. Gold,
 
 813 So.2d 1057, 1060 (Fla. 4th DCA 2002) (“Fundamental to the concept of due process is the right to be heard which assures a full hearing, the right to introduce evidence at a meaningful time and in a meaningful manner, and judicial findings based upon that evidence.”);
 
 see also Fuentes v. Shevin,
 
 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (holding that procedural due process guarantees right to be heard in a meaningful manner);
 
 Beltran v. Kalb,
 
 982 So.2d 24, 26 (Fla. 3d DCA 2008) (same).
 

 The record is that at the time the balloon payment required under the contract for deed came due, the owner and seller of the property, Isserlis, had died. Meza was, therefore, obligated to Isserlis’ estate or to someone entitled to inherit her property to perform under the contract. It was, therefore, imperative that the court below determine who owned this property so that the proper party could be joined, defend its ownership interest against Meza’s claim that her default should be forgiven, and receive payment of the balance of the purchase price due under the contract for deed if later performance is allowed.
 

 Reversed and remanded with instructions.
 

 [1]
 

 . As explained in
 
 White v. Brousseau,
 
 566 So.2d 832, 835 (Fla. 5th DCA 1990):
 

 [A] contract for deed wherein the seller agrees to convey title to land after the buyer pays all installments of the purchase price is merely a security device and is an alternative or substitute to an immediate conveyance of the title to the buyer with a purchase money mortgage back to the seller. Under equitable concepts, the buyer under the agreement for deed is in the same position as the purchaser-mortgagor and the seller is merely a lienor. Under the usual deed-mortgage sale arrangement, the buyer immediately receives and holds the legal title and the seller has a legal lien (mortgage) on the land; whereas under the land contract sale arrangement, die buyer immediately receives and holds the equitable tide and the seller holds the bare legal title only as security for the unpaid purchase price. The form is different but the substance is the same for equitable purposes including the foreclosure procedure in the event the buyer defaults in payment of some portion of the purchase price.
 

 [2]
 

 . The agreement for deed was executed on December 16, 1991, and provided for Meza to acquire the unit for $47,000 by making monthly payments of $411.78 from March 1, 1992 through February 1, 2000, with a final balloon payment of principal and interest due on February 28, 2000. The amount due was the amount that would have been due had the $47,000 purchase price been amortized over a thirty year period at 10 per cent per annum, that is, approximately $44,800.